OPINION OF THE COURT
Gerard M. Weisberg, J.
Third-party claimant, the State of New York, moves for a default judgment in its third-party declaratory judgment action against third-party defendants, Migoya Construction Co. and Commerce and Industry Insurance Co. The motion is granted in part and denied in part.
From the pleadings it appears that on June 20, 1983 a car crossed over the median separating east and westbound traffic on the Grand Central Parkway and struck a vehicle being driven by Michael Sangirardi and in which Frank J. Pilko (collectively, the claimants) was a passenger. Both died as a result of the crash and their representatives commenced actions in this court against the State. A joint bifurcated trial on the question of liability was commenced on April 15, 1991, but no verdict has yet been rendered, pending the submission of final briefs. In the suits, the claimants alleged, among other *425 things, that the defendant or its agents were negligent in the operation, control and maintenance of the roadway barrier dividers.
Prior to trial, on February 20, 1991, the State filed a third-party claim against Migoya and Commerce.[1] It was alleged therein that the State and Migoya had entered into a contract on or about February 23, 1983, pursuant to which the latter was to improve a portion of the Grand Central Parkway, including the accident site. The contract also obligated Migoya to procure liability insurance in which the State was to be named as an insured. Commerce provided such insurance. The third-party claim alleges further that Commerce was informed of the accident and claims in December of 1983 and again in January 1991 but refused to provide a defense. The third-party claim concludes with a prayer for a declaratory judgment providing as follows:
1. That Migoya is obligated to defend and indemnify the State;
2. That Commerce is obligated to defend and indemnify the State; and
3. That the State be awarded the costs, disbursements and attorneys’ fees resulting from the third-party defendants’ failure to defend and indemnify the third-party claimant.
Although an affidavit of service was not annexed to the State’s papers, an examination of the court’s files reveals that the third-party claim was served on Migoya and Commerce in accordance with the requirements set forth in Court of Claims Act § 11 on February 19, 1991. (Cf., Groger v State of New York, Ct Cl, Dec. 27, 1989, Blinder J.) Commerce asserts that it did not receive same until March 14, 1991. Even accepting that date, and that rule 206.7 of the Uniform Rules for the Court of Claims (22 NYCRR 206.7) applies (but cf., Groger v State of New York, supra), the answers were due before May 1, 1991. (Compare, CPLR 3012, with 22 NYCRR 206.7.) When no answers were served by such date, on or about May 9, 1991, the State moved for a default judgment whereupon a joint third-party answer was served by hand on May 20, 1991, which was apparently rejected.
In opposition to the State’s motion to enter a default judgment, the third-party defendants submitted the affirmation of *426 their attorney, the affirmation of Derek Patten, a claims examiner associated with Commerce, and annexed the late-served joint answer. Reading these papers together the third-party defendants’ defenses are, first, that the accident resulted from preexisting conditions and not from any work or omissions of Migoya. Second, they assert we lack the jurisdiction to resolve the question because it involves a disputed question of fact which must be tried before a jury.
Specifically, the proposed third-party answer asserts four affirmative defenses:
1. Laches sufficient to bar the action;
2. Laches sufficient to justify severance;
3. Lack of jurisdiction in that questions of fact requiring a jury trial exists;
4. Lack of jurisdiction to award costs, disbursements and attorneys’ fees.
In order to justify the vacatur of their default in answering, the third-party defendants must establish a meritorious defense, a reasonable excuse and the lack of prejudice to the other side. (Malpass v Mavis Tire Supply Corp., 143 AD2d 890.) With respect to the merits, the third-party defendants assert that we have no jurisdiction to proceed because questions of fact requiring a jury trial may exist and, in any event, the Court of Claims cannot award costs, disbursements or attorneys’ fees.
Section 9 (9-a) of the Court of Claims Act provides that the Court of Claims shall have jurisdiction: "To make a declaratory judgment as defined in section three thousand one of the civil practice law and rules with respect to any controversy involving the obligation of an insurer to indemnify or defend a defendant in any action pending in the court of claims, provided that the court shall have no jurisdiction to enter a judgment against an insurer pursuant to this subdivision either: (i) for money damages; or, (ii) if the insurer would otherwise have a right to a jury trial of the controversy with respect to which the declaratory judgment is sought.”
Thus, with respect to an insurer, we have the jurisdiction to declare its obligation to defend and/or indemnify a defendant in this court, provided, as to either obligation, the insurer would not be entitled to a jury trial.[2] When is a party entitled *427 to a jury trial? In a declaratory judgment action, a party is entitled to a jury trial when he or she would have been entitled to a jury trial under the most similar traditional form of action. (Martell v North Riv. Ins. Co., 107 AD2d 948.) The most analogous cause of action to a failure of an insurer to defend and indemnify under an insurance contract is a breach of contract action, which is an action at law. (Martell v North Riv. Ins. Co., supra.)
Pursuant to the New York State Constitution (NY Const, art I, § 2), litigants involved in an action at law have a right to a jury trial. (See also, CPLR 4101.) But does our inquiry end there? In other words, does an insurer’s theoretical entitlement to a jury trial divest us of jurisdiction if no disputed questions of fact exist? If so, we fail to see how jurisdiction could ever be exercised, and the statute would be rendered a nullity. Such is seldom a correct interpretation. (McKinney’s Cons Laws of NY, Book 1, Statutes § 144.)
Rather, we prefer to analogize to the analysis employed in the area of summary judgment. There the constitutional right to a jury trial is said not to attach unless a question of fact requiring trial exists. Otherwise, the remedy could never be granted in favor of a plaintiff or defendant. (See, Gerard v Inglese, 11 AD2d 381.)
Therefore, we hold that under Court of Claims Act § 9 (9-a), a third-party defendant insurer would have a right to a jury trial, thereby divesting the court of jurisdiction to proceed, if but only if, there exist disputed questions of fact that require a trial, and if a jury trial is demanded with respect thereto.
As to the latter point, section 9 (9-a) provides for a loss of jurisdiction where an insurer has "a right to a jury trial”. To have a right to a jury trial, one must have a legal entitlement to it and must demand it. If the right were self-effectuating, there would be no need under the CPLR for a demand for a jury trial nor case law delineating the parameters of the waiver thereof. (See, CPLR 4102; Siegel, NY Prac § 378.) Moreover, the policy behind the proviso in section 9 (9-a) supports this interpretation. The legislative history indicates that the primary goal behind the statute was to allow one Judge who was already familiar with the underlying controversy to determine the question of insurance coverage, and that such jurisdiction would be denied only where its exercise would infringe a litigant’s paramount right to a jury trial. *428 (See, Gordon v State of New York, 146 Misc 2d 479, 481.) Where, however, a jury trial, even if available, is not demanded, there is no reason not to allow this court to resolve the entire matter.
Finally, we note that the statute does not confer jurisdiction to enter a judgment for money damages. We interpret this to mean that while, in appropriate circumstances as indicated above, we can declare that an insurer has an obligation to defend or indemnify a defendant, the latter would have to sue on the judgment in another court to convert it to one for money damages.
Applying the foregoing to Migoya, the initial inquiry must be: does section 9 (9-a) apply to it? As noted above, the statute is limited to insurers. Unfortunately, it does not define the term. The legislative history indicates that a major, if not the sole, reason for the statute was to avoid having matters that could be completely determined by the Court of Claims have to be partially determined by the Insurance Department. (See, Gordon v State of New York, 146 Misc 2d 479, 481, supra.) Inasmuch as the latter regulates insurance companies, clearly "insurer” encompasses insurance companies. But does it include more?
Case law in another context has held that contractors who procured liability insurance for the benefit of third parties were not transformed into insurance companies by such conduct. (See, e.g., People v Westchester Colprovia Corp., 1 AD2d 724.) Moreover, and most importantly, insurance is a specific type of indemnity contract. (See, 68 NY Jur 2d, Insurance, § 501.) If the Legislature intended to subject all indemnitors to the jurisdiction of this court, it would presumably have employed that term instead of the more limited "insurer.” We therefore hold that a contractor with a tort or contractual obligation to indemnify a defendant in this court is not an insurer within the meaning of section 9 (9-a). Based thereon, we have no jurisdiction over Migoya. (See, Schrader v State of New York, Ct Cl, Mar. 7, 1991, Rossetti, J.)
With respect to Commerce and its obligation to provide the State with a defense, the test is: "So long as the claims, even though predicated on debatable or even untenable theory, may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer’s responsibility to pay, there is no doubt that it is obligated to defend”. (Schwamb v Fireman’s Ins. Co., 41 NY2d 947, 949.) Here, as *429 indicated above, the claimants alleged that the State or its agents were negligent in the operation, control and maintenance of the median barriers. It is also admitted, or not denied, that Migoya executed a contract to work on the Grand Central Parkway at the accident site and posted signs to that effect some three months before the incident. Commerce’s insurance policy period was from March 1, 1983 to March 1, 1984. It was notified of the accident and suit immediately thereafter and a defense was demanded. Moreover, Migoya was, according to Commerce, sued in another court with respect to this mishap. Commerce admitted maintaining a file with respect to this action. Presumably, it supplied a defense, there being no allegation to the contrary.
In the normal course, the question of whether an insurer must defend is a question of contract construction which is itself a question of law for the court and is usually decided summarily. (See, e.g., Seaboard Sur. Co. v Gillette Co., 64 NY2d 304.) Commerce has offered nothing that would require a trial, jury or otherwise, with respect to this issue. That Migoya was allegedly successful in another court is irrelevant. Assuming its victory was on the merits (something we do not know inasmuch as none of the file was submitted) the obligation to defend is broader than the duty to indemnify. (See, Schwamb v Fireman’s Ins. Co., 41 NY2d 947, supra.) The test is in the pleadings. Based thereon, Commerce should have been and should be defending the State herein, and we so declare. That we have already tried the liability phase of claimants’ action against the State is irrelevant. The failure to defend was and is a breach entitling the State to such monetary damages as it can prove within the policy limits. That amount, however, is beyond our jurisdiction to determine. (Court of Claims Act § 9 [9-a].)
In connection with this last point, we think it should be noted that the State has sought in its judgment a declaration that it be awarded costs, disbursements and attorneys’ fees based on Commerce’s failure to defend. The award of such items are prohibited by Court of Claims Act § 27 and attorneys’ fees are not recoverable in the absence of a statutory or contractual authorization for them. In the only two prior decisions which we have found construing the substantive provisions of section 9 (9-a), the State likewise sought costs, disbursements and attorneys’ fees which were rejected pursuant to section 27. (Gordon v State of New York, 146 Misc 2d *430 479, supra; Schrader v State of New York, Ct Cl, Mar. 7, 1991, Rossetti, J., supra.)
We believe the State has mislabeled its requested relief. Where an insurer has contracted to supply a defense and failed to do so, it has breached that contract. Whatever reasonable expenses and attorneys’ fees the insured has incurred in obtaining or attempting to obtain a defense would then be damages recoverable as a result of the breach. (Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, supra.) Thus, the State is entitled to costs, disbursements and attorneys’ fees, not as such, but as are found by a court of competent jurisdiction to be contract damages for Commerce’s breach of its duty to defend.
As to indemnity, as stated above, Commerce submitted its attorney’s affirmation which does not purport to be based on personal knowledge, and which contains statements such as: "It is our understanding that Migoya * * * did not actually commence construction work until * * * several weeks after the June 20, 1983 accident * * * There may well also be a question of fact [with respect to the interpretation of the insurance contract].” We have given this speculation no weight. Similarly, the proposed answer was verified by the attorney. Moreover, the answer fails to deny that Commerce was notified of the accident in 1983 and again in early 1991.
The affidavit of Mr. Patten, however, states that the third-party claim was received at his office at a time when they were involved in moving, resulting in the papers being misplaced or misfiled. As to the merits, he affirms that Commerce’s records indicate that Migoya was a third-party defendant in an action in another New York State court and that such action was settled in 1987 without any payment on behalf of Migoya. From this he asserts that there must have been a finding of no liability.
Were this conclusion established here, it might well defeat the State’s action for indemnity. Moreover, its very prospect would probably divest us of jurisdiction to determine the question by requiring a jury trial with respect thereto. At this point, it raises the appearance of a meritorious defense. Since there is no allegation that the few days that the third-party answer was late has prejudiced the State, and since the question of indemnification cannot be determined until the *431 State’s liability to the claimants has been determined (Prashker v United States Guar. Co., 1 NY2d 584) we exercise our discretion, vacate Commerce’s default and allow it to serve and file its answer with respect to the cause of action seeking a declaration of indemnity.

. A third-party action was also commenced against Highlands Insurance Co., which was discontinued pursuant to a stipulation.

. The obvious reason for this limitation is that we do not have the jurisdiction to conduct jury trials. (Cornell v State of New York, 46 NY2d 1032.)